Carol L. Marcus *v.* Burton S. Marcus

House, C. J., Loiselle, Bogdanski, Longo and Speziale, Js.

Argued January 4—decision released May 16, 1978

*Lucy V. Katz,* with whom was *Arnold H. Rutkin,* for the appellant (defendant).

*Irving H. Perlmutter,* with whom, on the brief, were *Andrew M. Ullman* and *Gary P. Sklaver,* for the appellee (plaintiff).

LONGO, J.  The defendant, Burton S. Marcus, is appealing from a judgment awarding damages with interest in an action for money claimed to be due to the plaintiff, his former wife, under the terms of a separation agreement.  The parties married in 1961 and had two children, born in 1967 and 1968. Sometime prior to March 4, 1971, the plaintiff commenced a divorce action in Connecticut.  On March 4, 1971, the parties entered into a separation agreement which was the product of many meetings and conferences between counsel for the parties and the parties themselves.  The contract provided for custody of the children in the plaintiff, imposed on the defendant the obligation to pay a fixed sum per year for the support and maintenance of the plaintiff and the children, and further provided in a separate paragraph:  "Pro-Rata Share of Increased Income of Husband.  In the event that said Husband's income shall increase in any one year, then in that event the said Wife and children shall be entitled to share proportionately in said increase of said income.  Said proportion of any increase in Husband's income above $24,000.00 per

year be shared [sic] by the Wife and children shall be 25% of any increase. The Husband shall henceforth on a yearly basis provide the Wife with a copy of his income tax return the same being the one filed with the United States Internal Revenue Department for the purpose of ascertaining his yearly income. If necessary, Husband agrees to execute, acknowledge and deliver to Wife an authorization to obtain said Income Tax Return."

On March 6, 1971, the defendant obtained from a Mexican court a divorce decree which incorporated the separation agreement by reference. Shortly thereafter he carried out a decision he had made sometime during 1970: On May 1, 1971, the defendant caused to' be incorporated, under Connecticut law, a professional corporation for his dental practice. At no time prior to the execution of the separation agreement was the plaintiff informed of the defendant's intention to incorporate. The defendant became the sole stockholder and director of the corporation, which made all the expenditures required to conduct the defendant's dental practice and paid him a salary. The corporation also contributed to a pension and profit-sharing fund to provide retirement benefits for the defendant and the corporation's other employees.

The defendant paid only the fixed sum per year required by the separation agreement for the support of the plaintiff and the children in the four years at issue, 1971 through 1974, and gave the plaintiff copies of his personal income tax returns. He did not provide her with copies of his corporate income tax returns. The plaintiff brought this

action in 1972 seeking, inter alia, money claimed to be due by operation of the separation agreement's escalator clause.

The parties are principally in dispute as to the meaning of the word "income" as used in the escalator clause. The defendant contends that the term means "net available income," which he defines with reference to his personal income tax returns as adjusted gross income, less all personal exemptions, itemized deductions and taxes paid. By this reckoning the defendant's annual income was less than the base figure of $24,000 in each of the four years in question. The plaintiff maintains that "income" as used in the escalator clause means what the defendant earns from the practice of his profession less the legitimate costs of earning it. According to her definition, the defendant's annual income substantially exceeded $24,000 in all four years.

The escalator clause leaves no room for doubt that the parties intended that the plaintiff and the children should benefit in subsequent years whenever the defendant's income exceeded $24,000. But the key term "income" is not defined in the escalator clause or elsewhere in the contract. When a contract term is ambiguous, " '[t]he oft-repeated rule is that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words in the light of the circumstances surrounding the execution of the writing and in the light of the object of the parties in executing the contract.' *New Haven Sand Blast Co.* v. *Dreisbach,* 102 Conn. 169, 180, 128 A.2d 320." *White Oak Corporation* v. *State,* 170 Conn. 434, 439, 365 A.2d 1162. The words used by the parties " 'must be accorded their common

meaning and usage where they can be sensibly applied to the subject matter of the contract.' *Beach* v. *Beach,* 141 Conn. 583, 589, 107 A.2d 629." *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647–48, 153 A.2d 828.

In support of his definition of income the defendant relies chiefly on the parties' joint income tax return for 1970, which showed their "net available income" to be $23,935. There was testimony from the defendant and his accountant that the return, although dated April 13, 1971, about five weeks after the separation agreement was signed, was prepared earlier and that it played a prominent role in the choice of the $24,000 base figure, which was simply the defendant's 1970 "net available income" rounded off. It was the intent of the parties, the defendant claims, that this method of computing income would continue in future years. On the other hand, the attorney who negotiated for the plaintiff testified that during the negotiations he did not know exactly what the defendant's earnings and tax liabilities were; that the 1970 tax return did not figure significantly, if at all, in the negotiations; that $24,000 was a compromise figure, he preferring a lower base and the defendant's counsel arguing for a higher base; and that the definition of "income" contemplated by both attorneys at the time of drafting the final agreement was what the defendant earned less the customary expenses of earning it.

As the trier of fact the referee, sitting as a court, was entitled to credit the plaintiff's evidence and conclude that "income" as used in the escalator clause was intended by the draftsmen and the parties to mean what the defendant earned in the prac-

tice of his profession less the necessary expenses of earning it. This accords with the dictionary definition of income, "a gain or recurrent benefit that is usu[ally] measured in money and for a given period of time"; Webster, Third New International Dictionary; and with the definition of "net income" followed by this court and the courts of other states. *Sturtevant* v. *Sturtevant,* supra, 648; annot., 79 A.L.R.2d 609.

The defendant further contends that under any reasonable definition of income, the court erred in including in his income for the years 1972 through 1974 the corporation's contributions on his behalf to the pension and profit sharing fund. In accordance with the applicable provisions of the Internal Revenue Code, 26 U.S.C. §§ 401–415, each year the corporation contributed to the fund an amount equal to 25 percent of the defendant's annual salary, the highest percentage allowed by law. The pension contributions were deducted by the corporation as a business expense. They were not reportable as income by the defendant, and are not taxable to him until they are paid out of the fund.

The defendant asserts that the pension contributions are not income to him because he has not actually received them and cannot have the use of them prior to age fifty-nine and one-half without incurring severe tax penalties. We do not agree. Contributions to a pension plan are in the nature of compensation for services rendered. The decision whether and at what rate the corporation would contribute to a pension fund was entirely in the hands of the defendant, as sole director and stockholder of the corporation. Under the circumstances the defendant's election to defer receipt of

a large portion of his compensation from the corporation did not change the payments into something other than income as that term is used in the escalator clause. See *Edwin's, Inc.* v. *United States*, 501 F.2d 675, 679 (7th Cir.).

We are unpersuaded by the defendant's argument that excluding pension contributions from his current income honors the intent of the parties by providing financial security for the plaintiff in future years when she, too, will be less able to work. The obvious purpose of the escalator clause is to entitle the plaintiff and the minor children to share immediately in any increase in the defendant's income beyond $24,000. That purpose would be thwarted if they are forced to wait, possibly for many years, until the defendant withdraws his pension benefits from the fund, at a time when his income from dental practice may have fallen well below $24,000.

The defendant's next assignment of error concerns an evidentiary ruling. The plaintiff called as her witness the defendant's accountant, Henry A. Frauenhofer. On cross-examination Frauenhofer was asked to testify as to the meaning of the word "income" in accountancy custom and usage. The court sustained an objection to the question, and the defendant has assigned this ruling as error. At a later hearing the court permitted another accountant called by the plaintiff to answer virtually the same question on direct examination, but also ruled that the defendant, too, could pursue this line of questioning. At the final hearing Frauenhofer's partner, Samuel Discenza, was called as an expert witness by the defendant, Frauenhofer having died in the course of the trial. The defendant did not

choose to question Discenza concerning the meaning of "income" according to accountancy custom and usage.

Frauenhofer's opinion of the meaning of income in accountancy was relevant to the intent of the parties. The court's erroneous ruling was rendered harmless, however, by the admission into evidence of a letter from Frauenhofer to the defendant expressing his understanding of the financial terms of the separation agreement and by the opportunity afforded the defendant to introduce expert testimony on this point. It was not vital to the defendant's case to elicit an expert opinion from Frauenhofer rather than Discenza. Neither accountant participated in the separation negotiations between the parties and their counsel. The question pertained to custom and usage in the accountancy profession generally and Discenza presumably was as qualified as Frauenhofer to answer it.

The defendant further assigns error in the court's finding that the failure of his trial counsel to testify "requires" the conclusion that his testimony would have been adverse to the defendant. The defendant's counsel had represented him in separation negotiations with the plaintiff's attorney, who did withdraw from the case as trial counsel, and testified as to the intent of the parties and the draftmanship attendant to the preparation of the separation agreement. It is clear, in the light of its other findings, that the court did no more than draw a permissible inference against the defendant under the adverse inference rule of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598, recently reviewed in *Fontaine* v. *Coyle*, 174 Conn. 204, 206, 384 A.2d 616. The defendant's counsel was

available to testify and was a witness whom the defendant naturally would produce, as one who could reasonably be expected to have peculiar or superior information material to the defendant's case.

The defendant asserts that the court erred in awarding interest at the rate of 6 percent a year on the sums found due under the contract, pursuant to General Statutes § 37-3a. Under this statute, interest ordinarily begins to run from the time when the money was due and payable. It is a proper element of damages if the detention of the money was wrongful under the circumstances. *Cecio Bros., Inc.* v. *Feldman,* 161 Conn. 265, 274–75, 287 A.2d 374. Nothing in the record indicates that the defendant was justified in withholding the sums due each year, by virtue of some provision of the separation agreement or for any other reason. The court in its discretion properly concluded that an award of interest was necessary to do complete justice to the plaintiff.

We find no error in the decision of the court that the defendant's annual income for the years 1971 through 1974, as that term is used in the escalator clause, consisted of his salary from the corporation plus the amounts contributed by the corporation to the pension fund on his behalf, and in the court's calculation of the damages due to the plaintiff. To clarify our holding we add a final comment. With the exception of modest amounts of interest reported on his 1971 and 1973 tax returns, it appears that the defendant's income for the four years in question consisted solely of earned income from the corporation. Thus the court had no occasion to decide whether "income" as used in the escalator

clause was intended to encompass so-called unearned income such as dividends or capital gains, and we express no opinion on the matter. See *Fischer* v. *Fischer*, 32 App. Div. 2d 635, 300 N.Y.S.2d 438.

There is no error.

In this opinion the other judges concurred.