[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, ConnTech Development Company ("ConnTech") and Celeron Square Associates ("Celeron Associates"), appeal a decision of the defendant, the Planning and Zoning Commission of the Town of Mansfield ("Commission"), denying the plaintiffs' application for a modification to a special permit. The plaintiffs also raise a constitutional "takings" claim arising from the deprivation of property rights suffered as a result of the Commission's decision.
FACTS
The land subject to this appeal involves two parcels of property located in the Town of Mansfield (the "Town"), which consist of a multi family housing development ("Celeron Square") and a 3,500-foot pedestrian and bicycle pathway (the "Pathway"). The Pathway connects Celeron Square to the University of Connecticut at Storrs ("UCONN") campus, which is owed by the State of Connecticut (the "State").
On September 30, 1985, the State leased, inter alia, this CT Page 5298 property to the University of Connecticut Educational Properties Inc. ("UCEPI"), a state entity, for a ninety-nine-year term. (Exhibit A) On June 16, 1987, UCEPI sublet the property that Celeron Square is now located on and part of the land that the Pathway is now located on to ConnTech. (Exhibit B) This lease was for a term of forty-five years, with four five-year options to extend. (Id.) Part of the Pathway is located on State land, which is leased to UCEPI by the State. (Exhibit A, p. 19, Exhibit B) UCEPI granted ConnTech an easement over this portion of State land. (Exhibit A) On May 16th, 1988, ConnTech assigned its' remaining term on the sublease, including the easement, to Celeron Associates. (Exhibit D) ConnTech is the maker of a mortgage on the Celeron property and the guarantor of a separate mortgage on the same property. (Exhibit D)
In September 29, 1986, the plaintiffs submitted a site plan and special permit application to the Commission to develop the subject property. (Complaint, pal. 10; Answer par. 1) On February 23, 1987, the Commission granted Phase I of the site plan on the condition that, inter alia, ConnTech submit a "plan for adequate lighting and maintenance of . . . [the] bicycle/pedestrian path." (ROR, Item 1, p. 2) In accordance with the Commission's requirement, the plaintiffs submitted to the Commission a lighting and maintenance plan, constructed the Pathway and installed lighting fixtures. (Complaint par. 14, Answer par. 1). The original composition of the lighting plan consisted of a full length high pressure sodium bollard fixture spaced every forty-five feet along the entire length of the path. (ROR, Item 3) The fixtures themselves consisted of 100W high pressure sodium lamps with a reflector system and an average illumination level of 0.3 f.c. (ROR, Item 2, Attachment 3, p. 2) The plaintiffs claim that vandals have continually destroyed the lighting fixtures. (ROR, Items 8 and 10) At first, ConnTech replaced or repaired the lighting system. (ROR, Item 8) It then submitted a revised plan for changing the design of the light fixtures so the lights would be less susceptible to vandalism. (ROR, Item 8) The revised plan changed the height of the lightening fixtures to 15 feet and the spacing to every 90 feet. (ROR, Item 8) In submitting this plan, the plaintiffs stated that "we have lit the path in good faith and will do so again, however, should these lights be destroyed we cannot be put in the position of having to regularly replace a very expensive and extensive lighting system." (Id.)
On February 3, 1993, the plaintiffs applied to the CT Page 5299 Commission for modification of its site plan and special permit approvals to enable it to terminate all provisions for lighting fixtures on the Pathway. (ROR, Item 11) In support of its application, ConnTech submitted that the lighting was no longer necessary and desirable due to (1) a change in pedestrian traffic patterns, (2) continuous vandalism, and (3) lack of adequate security to prevent continuous vandalism. (Complaint par. 18; Answer 1; ROR, Item 11). Between February 3, 1993 and June 7, 1993, the Commission heard statements, arguments and presentations regarding the modification application. (Complaint par. 19, Answer 1). On June 7, 1993, the Commission denied the application for modification. (ROR, Item 11) The grounds for the denial were as follows:
 (1) The lighted pathway, a direct transportation linkage from Celeron Square to and from the University, was considered an important element of the Celeron Square housing plans to address safety and traffic concerns on Hunting Lodge Rd. when the plans were approved by the PZC. The lighting extends the useage [sic] and directly promotes the health, safety, welfare and convenience of Celeron Square residents. Comments provided at recent PZC meeting verify that the pathway continues to be used during daylight as well as nighttime hours. Students indicated that the shuttle bus does not always operate whenever needed.
 (2) The ConnTech Development Co. may not have installed adequate support structures for the required pathway lighting. Until such time as the maintenance of vandal-resistant lighting support structures proves to be an unreasonable expense, the health, safety, welfare and convenience benefits to Celeron Square residents associated with a lit pathway warrant the property owner's installation and maintenance of a sturdier, vandal-resistant lighting system along the pathway.
(ROR, Item 11)
The Commission did not publish notice of its decision. (Complaint, par. 21, Answer 1). On or about July 14, 1993, the plaintiffs filed this appeal from the Commission's denial of its special permit modification application.
On appeal to the court, the plaintiffs argues that the Commission's denial was arbitrary, capricious, illegal and an CT Page 5300 abuse of discretion, because:
 (1.) The decision of the Commission is not supported by the evidence, the record or by the law;
 (2.) The action of the Commission was illegal in that it violated and/or ignored the provisions and requirements in its own regulations;
 (3.) The Commission impermissibly expanded the obligations of the previously-issued permit;
 (4.) The Commission is maintaining a requirement which it has not authority to maintain;
 (5.) The Commission wrongfully held ConnTech and/or Celeron Associates to a standard which it has not applied to other similarly situated property owners, developers, lessees, and/or others with a property interest.
 (6.) The Commission failed to complete the hearing within 30 days of the initiation of hearings on ConnTech's application to modify its site plan;
 (7.) The Commission failed to render a decision on ConnTech's application to modify its site plan within sixty-five days of its submission;
 (8.) The Commission failed to afford ConnTech an evidentiary hearing on its application.
 (9.) The Commission failed to publish a prehearing notice that it would be considering ConnTech's application to modify its special permit/site plan;
 (10.) The Commission failed to publish notice of its decision;
 (11.) The actions and omissions of the Commission are in violation of Chapter 24 of the General Statutes;
 (12.) The decision of the Commission is illegal, arbitrary, capricious and beyond its statutory authority; and
CT Page 5301
(13.) The Commission's decision reflects bias.
AGGRIEVEMENT
To take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). The defendant does not allege that the plaintiffs have failed to comply with any statutory provision, and the court is unaware of any jurisdictional deficiencies regarding the within matter. Nonetheless, because subject matter jurisdiction may never be waived by the parties, the court briefly addresses the issue of aggrievement.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially and injuriously affected as to property or other legal rights."Smith v. Planning Zoning Board, 203 Conn. 317, 321,524 A.2d 1128 (1987). In the present case, during oral argument, the plaintiffs introduced evidence Exhibits A-E as proof of aggrievement.[1] Based on this evidence, the court finds that ConnTech is the guarantor of the mortgage on the land and remains liable for any breach of conditions and covenants on the sublease; Celeron Associates is the sublessee of the property; and there is a legal nexus between the Pathway and Celeron Square.
If a Commission's decision adversely affects a lessor's land parcel, a long term sublessee of a land parcel is an aggrieved party. See Primerica v. Planning Zoning Commission, 211 Conn. 85,94, 558 A.2d 646 (1989); Michel v. Planning ZoningCommission, 28 Conn. App. 314, 324-25, 612 A.2d 778 (1992). Accordingly, Celeron Associates is aggrieved and has standing to bring this appeal.
ConnTech is a guarantor of the mortgage placed on the property and remains liable for the performance and observance of CT Page 5302 the covenants and conditions in the sublease. "The critical inquiry [into determining standing] is whether the applicant was in fact a real party in interest with respect to the subject property." Michel v. Planning Zoning Commission, supra,28 Conn. App. 324. In making that determination, courts should look to "[w]hether the applicant is in control of the property, whether he is in possession has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property." Id., 324-25. The court finds that based on its position as guarantor of the mortgage and its continuing liability exposure on the sublease, ConnTech is a real party in interest. Accordingly, ConnTech is aggrieved and has standing to bring this appeal.
STANDARD OF REVIEW
When a decision of a zoning board of appeals is challenged, the burden of proving that the board acted improperly is upon the plaintiff. Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991); Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988). In applying the law to the facts of a particular case, the board is endowed with liberal discretion, and its decision will not be disturbed unless it is found unreasonable, arbitrary or illegal. Spero v. Zoning Boardof Appeals, supra, 217 Conn. 440. Thus, the question on appeal is simply whether the evidence in the record reasonably supports the agency's action, and the court cannot substitute its judgment as to the weight of the evidence for that of the agency.Goldberg v. Zoning Commission, 173 Conn. 23, 27, 376 A.2d 385
(1977) (site plan); Housatonic Terminal Corp. v. Planning Zoning Board, 168 Conn. 304, 306, 363 A.2d 1375 (1975) (special permit).
The agency's action is to be sustained if any of the reasons stated is sufficient to support the decision. Property Group,Inc. v. Planning Zoning Commission, 226 Conn. 684, 697,628 A.2d 1277 (1993); Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, 17 Conn. App. 53, 56-57, 549 A.2d 1076 (1988). Where the zoning authority has stated the reason for its decision, the court is not at liberty to probe beyond them. Demaria v.Planning Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105
(1970).
CLAIMS OF THE PARTIES
CT Page 5303
In the present case, the plaintiffs first argue that the Commission was required to follow the procedural requirements as set forth in C.G.S. § 8-3c, 8-7d since: (1) the "meetings" the Commission held on the modification application were in fact hearings; (2) the Commission's regulations require a hearing and (3) C.G.S. § 8-3c mandates a hearing. They then argue that the Commission's decision was defective in that it: (1) failed to publish prior notice of the hearings; (2) failed the complete the hearing within the statutory time frame and (3) failed to publish notice of its decision. In response, the defendant argues that the Commission's regulations did not impose these requirements on an application to modify a special permit. It asserts that a public hearing is required only when the Commission orders the party requesting the modification to submit a new special permit application. In the present case, the Commission did not require the plaintiffs to file a new special permit application.[2]
Therefore, the defendant argues, no hearing was required. Consequently, it was not required to follow the procedural requirements of C.G.S. §§ 8-3c, 8-7d.
The plaintiffs also argue that the conditioning of the special permit on lighting the Pathway was beyond the authority of the Commission. The plaintiffs argue that the Pathway is a public roadway and the General Statutes do not authorize the Commission to condition approval of a special permit on the improvement of a public roadway. Moreover, the plaintiffs argue, the Commission unilaterally expanded the lighting requirement, i.e., the initial approval was conditioned on ordinary maintenance of the lighted Pathway and now the condition has been expanded to require the plaintiffs to replace vandalized lighting. In its brief, the defendant did not respond to this argument.
The plaintiffs claim that the Commission's decision is not supported by the record. They assert that the Commission's stated reason for denying the modification was that the "lighting supports the health, welfare, safety and convenience of Celeron Square residents." (ROR, Item 11). They argue, however, that a fair reading of the record reveals that the lighting does not enhance the security for Celeron Square residents and the Celeron Square residents are not the primary users of the path. They further argue that the Commission based its denial on the assumption that vandal resistant poles are available, an assumption the plaintiffs assert is invalid. In response, the CT Page 5304 defendant argues that the approval criteria for Special Permits in the Mansfield Zoning Regulations includes the following: "that . . . pedestrian access to the property and egress from the property . . . are safe and suitable and have been designed to maximize safety and to avoid hazards." Therefore, the defendant contends, the reasons given for the denial are within the scope of the regulations, pertinent to the decision and supported by the record.
Finally, the plaintiffs argue that the Commission's decision reflects bias. They contend that the Town is currently seeking federal funding for the Pathway and that keeping the Pathway lit will increase the probability of receiving the funding. Accordingly, the Commission had a personal interest in the outcome of the proceeding and its' decision must be deemed invalid. The defendant did not respond to this argument.
The plaintiffs raised additional grounds in their appeal that were not briefed. (Complaint, par. 23(e) and (k)) "Issues not briefed are considered abandoned." State v. Ramsundar,204 Conn. 4, 16. 525 A.2d 1311 (1987), cert. denied, 484 U.S. 955
(1987). Since the plaintiffs did not brief these issues, the court does not consider them.
I. Administrative Appeal
 A. THE STATUTORY REQUIREMENTS FOR SPECIAL PERMITS DO NOT APPLY TO MODIFICATIONS.
There is no doubt that a hearing is required when a special permit application is filed. C.G.S. § 8-3c(b); Fuller, Land UseLaw and Practice, § 20.1, p. 344 (1993). A question presented in the instant case is whether a hearing is required when an application to modify a special permit is filed.
Under the Town of Mansfield's zoning regulations ("Regulations"), special permit modifications "shall be administered in accordance with the provisions of Article V, Section B.9." Regulation, Article XI, Section D (pp. 164-5). Regulation, Art. V, § B.9, states, in pertinent part:
 The Commission, in the reasonable exercise of its discretion, shall have the right to approve the revision without the submission of a new application; or where the proposed revision is considered a significant alteration ofCT Page 5305 the approved plans the Commission shall have the right to require the submission and procession of a new special permit application.
(Emphasis added.)
Under these regulations, there are no provisions for a hearing on modification requests. The statutory requirement of a hearing only applies when the Commission, in the exercise of its discretion, orders the party requesting the modification to submit a new special permit application. Thus, if the Commission does not order a new application to be filed, it's only obligation under the regulations is to act on the modification request. In the present case, there was a series of meetings and correspondence between the parties in which the pro and cons of the lighting requirement were debated. After these meetings, the Commission denied the request and listed the reasons for the denial. The court finds that this course of action was in conformity with the regulations.
In addition, the court is unaware of any statute requiring a hearing for a modification to a special permit application. C.G.S. § 8-3c(b) governs hearings on special permits, exceptions and exemptions. It provides, in pertinent part: "the zoning commission . . . shall hold a public hearing on an application or request for a special permit . . ." Nothing in this statute requires a hearing in cases requesting modification to a special permit. See Van Stone's Cypress v. Stratford Zoning Comm'n,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 292015 (January 8, 1993, Levin., J.) (holding that there is no hearing requirement for modifications.)
Furthermore, when ruling upon a special permit, a zoning authority acts in an administrative capacity, and its function is simply to determine whether the proposed use is expressly allowed and whether the standards set forth in the regulations and General Statutes § 8-2 are satisfied. Double I LimitedPartnership v. Planning and Zoning Commission, 218 Conn. 65, 72,588 A.2d 624 (1991); Housatonic Terminal Corp. v. Planning Zoning Board, supra, 168 Conn. 307. If the regulations and statutes are satisfied, the board has no discretion to deny a special permit. Felsman v. Zoning Commission, 31 Conn. App. 674,678, 626 A.2d 825 (1993); Daughters of St. Paul, Inc. v. ZoningBoard of Appeals, 17 Conn. App. 53, 56, 549 A.2d 1076 (1988). Therefore, as Professor Tondro points out in his book: CT Page 5306
 Constitutional due process does not require a hearing if neither the statute nor local ordinance requires one, at least where the agency making the decision is acting, administratively' and there has no discretion to withhold approval if al [all] the conditions of the regulations are met.
Connecticut Land Use Regulations, p. 396 (2d Ed. 1993). Since the present case involves neither a statutory mandate nor an exercise of discretion, a hearing was not constitutionally required. Accordingly, the hearing requirements of C.G.S. §§ 8-3c and 8-7d were not triggered.[3]
Lastly, the court is aware of no impediment blocking the plaintiffs from submitting a new application to the Zoning Board, which would imposed procedural requirements. See, e.g., Regulation Article V, § B(9)(D) (regulation does not expressly prohibit the filing of a new special permit application if an applicant feels it is requesting a substantial modification). If the plaintiffs choose to do so, they would have the opportunity to have a formal hearing. In addition, abutting landowners would be given notice of the hearing and an opportunity to be heard (C.G.S. § 8-3c(b); Regulation, Article V, § B (3)(c)), a right not available to them by the procedure utilized by the plaintiffs.
B. THE CONDITION IS VALID.
1. The decision was within the scope of regulatory authority.
The plaintiffs argue that the defendant exceeded its authority in conditioning its approval of the special permit application on building and maintaining a lighting system on a "public roadway", i.e., the Pathway. They contend that there is no authority in the Regulations or General Statutes for the Commission to condition application approval on the improvement of a public way.
A zoning agency must have regulatory authority to impose conditions on special permits. UpJohn Co. v. Zoning Board ofAppeals, 224 Conn. 96, 100, 616 A.2d 793 (1992). Article V, § B(5) of the Regulations (Approval Criteria for Special Permits) provides, in pertinent part:
In all special permit applications, the burden rest with the CT Page 5307 applicant to demonstrate to the Commission that the subject proposal will not be detrimentally affect the public's health, welfare and safety and that the following criteria have been met:
(a) That all approval criteria stated in Art. V. § A.5 (Site Plan Approval Criteria) have been met . . ."
In turn, Article V, § A.5 states, in pertinent part:
 In reviewing and approving any proposed site plan application, the Planning and Zoning Commission shall determine that the public's health, welfare and safety have been protected and that the following criteria have been met:
 (e) That vehicular and pedestrian access to the property and egress from the property and internal vehicular and pedestrian traffic patterns are safe and suitable and have been designed to maximize safety and avoid hazards and congestion. . . . As deemed necessary, off-site road and drainage improvements may be required by the Commission.
The regulations authorize the Commission to impose conditions on a special permit that involve providing a safe means of travel to and from the property. In the present case, the Commission required that the plaintiffs provide a lighted Pathway to ensure that Celeron Square residents would have safe access to the UCONN campus. (ROR, Item 12, p. 56). This condition was well within the scope of the Commission's authority. The court rejects the plaintiffs' argument that the Commission acted beyond its regulatory authority.
Moreover, assuming arguendo, the Pathway is a public way, the plaintiffs mistakenly rely on Property Group. Inc. v.Planning Zoning Commission, 29 Conn. App. 18, 613 A.2d 1364
(1992), aff'd, 226 Conn. 684 (1993), for the proposition that a Zoning Commission cannot condition approval on a requirement that an applicant improve an off-site public way. In Property Group,
the trial court affirmed a zoning commission's decision to condition approval of a proposed subdivision on the plaintiff's widening of an abutting public highway. The Appellate Court reversal was not based on the Commission's lack of statutory and regulatory authority to impose the public way improvement CT Page 5308 condition. Instead, the court reversed on the ground that the "record lacks any evidence for an off-site improvement or improvements is necessitated or required by the proposed development application." Id., 27. The court specifically stated that "because there was no substantial evidence to satisfy the standards of the regulation that purportedly allowed the commission to impose the condition, it is unnecessary for us to determine whether the regulation would be valid if substantial evidence did exist." Id.[4] Accordingly, Property Group is inapplicable to the present case.
2. The Commission did not unilaterally expand the condition.
The plaintiffs' argument that the Commission unilaterally expanded the condition boils down to an interpretation of the word maintenance. The plaintiffs argue that the maintenance originally required did not encompass replacing vandalized lighting. In support of their argument, they cite to a February 27, 1987 letter from Bradford Butt, ConnTech's project manager, to Aline Booth, Chairperson of the Mansfield Planning and Zoning Commission. (ROR, Item 2)[5] The letter states, inter alia, that ConnTech s maintenance plan envisioned that "routine maintenance of the path will be handled for UCEPI by the Celeron Square management work force. Corrective maintenance beyond the capacity of our own force will be contracted out." The court finds that this statement implies that ConnTech would be ultimately responsible for corrective maintenance, which arguably includes replacing lighting. Plausible arguments, however, could be made that this is not the case. Since there is ambiguity about what the term "maintenance" means, the court follows the well-established principle that term be construed according to its common meaning and usage. Marcus v. Marcus, 175 Conn. 138,394 A.2d 727 (1978). Webster's Ninth Collegiate Dictionary (1989) defines maintenance "as the upkeep of property or equipment." In turn, upkeep has been defined as the "state of being in good condition." Good condition implies that the equipment will be in working condition. Accordingly, the Commission did not expand the condition by requiring vandalized lighting to be replaced. Instead, all it mandated was that the lighting be in working order, a condition that falls within the ordinary meaning of maintenance.
C. THE COMMISSION'S DECISION IS SUPPORTED BY THE RECORD
The plaintiffs argue that the Commission's decision is not CT Page 5309 supported by the record in that (1) the lighting requirement does not protect the health, welfare and safety and convenience of Celeron Square residents; and (2) the Commission was operating under the assumption that vandal-proof lighting fixtures exist.
As noted earlier, a trial court is not at liberty to substitute its judgment for that of a local authority which is acting within its legislative powers. Frito-Lay. Inc. v.Planning and Zoning Commission, supra, 206 Conn. 572-73 (1988). In such circumstances, the court may grant relief on appeal only where the local authority has acted illegally, arbitrarily, or in abuse of its discretion. Smith v. Zoning Board of Appeals,227 Conn. 71, 80, 627 A.2d 1089 (1993), cert denied, 114 S.Ct. 1190
(1994). The commission's action is to be sustained if any one of the reasons stated is sufficient to support its decision.Property Group, Inc. v. Planning and Zoning Commission, supra,226 Conn. 697; Primerica v. Planning and Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989); Frito-Lay, Inc. v. Planningand Zoning Commission, supra, 206 Conn. 576. "The evidence, however, to support any such reason must be substantial. . . ."Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,540, 525 A.2d 940 (1987). The substantial evidence rule "is similar to the sufficiency of evidence standard applied in judicial review of jury verdicts." Id., 541.
In the present case, the Commission denied the request to delete the lighting condition because: (1) it found that the lighting promoted the health, safety, welfare and convenience of Celeron Square residents; and (2) the problem Celeron Associates was experiencing with the vandalism may have been due to inadequate support structures. (ROR, Item 11)
The record indicates that Celeron Square residents use the Pathway as a convenient way to access the UCONN campus. (ROR, Item 12, pp. 11, 13, 41, 51, 52, 54). Therefore, the court finds the Commission acted reasonably in denying the modification request on the ground that the lighting promoted the health, safety, welfare and convenience of Celeron Square residents. Since the commission's action is to be sustained if any one of the reasons stated is sufficient to support its decision, the court will not address the adequacy of the second reason. SeeProperty Group Inc. v. Planning and Zoning Commission, supra,226 Conn. 697; Primerica v. Planning and Zoning Commission,
supra, 211 Conn. 96; Frito-Lay, Inc. v. Planning and ZoningCommission, supra, 206 Conn. 576. CT Page 5310
D. THE COMMISSION WAS NOT BIAS
The concept of bias focuses on whether an individual member of the commission stands to personally gain from a decision in which he participated. "Public policy unquestionably requires that zoning officials in all matters properly before them for decision, decline to participate in situations which might reasonably conflict with a private, personal or financialinterest. The public official must not be permitted to place himself in the position in which personal interest may conflict with his public duty." (Emphasis added.) (Citations omitted.)Thorne v. Zoning Commission, 178 Conn. 198, 203, 423 A.2d 861
(1979); see also C.G.S. § 8-11. "The decision as to whether a particular interest is sufficient to disqualify, however, is necessarily a factual one and depends on the circumstances of the particular case." Cioffoletti v. Planning Zoning Commission,209 Conn. 544, 554, 552 A.2d 796 (1989).
With respect to the individual members of the Commission, there is no evidence that any of them stood to personally gain from the denial of the request for modification. Instead, the plaintiffs attempted to prove that the Commission was biased in making the decision based upon their interest, as a public entity, to obtain federal funding for the Pathway. The court finds this evidence insufficient to show that the Commission was bias in making its decision.
II. The "Takings" Claim
In their complaint, the plaintiffs allege that "[t]he Commission's refusal to modify ConnTech's site plan/specialpermit constitutes a taking and a violation of the Equal Protection Clause under the Fourteenth Amendment[6] to the United States Constitution and Art. 1, §§ 11, 20 of the Connecticut Constitution." (Emphasis added.) During oral argument, the plaintiffs conceded that the modification application did not ask for a deletion of the Pathway requirement but focused more narrowly and exclusively on the lighting requirement. Therefore, all that is before this court is the question of whether the requirement imposed on the plaintiffs to maintain lighting on the Pathway amounts to a taking.
Since the plaintiffs have the option of reapplying for the modification by submitting a new special permit application,[7]
CT Page 5311 there has not been a final agency determination on the issue. Connecticut follows the well established principle that a "plaintiff is not entitled to judicial review on the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination." Franciniv. Zoning Board of Appeals, 228 Conn. 785, 792. Since the possibility remains that the Commission will grant the modification request during its deliberations on the special permit application, the court finds that the "takings" argument has been prematurely raised. Accordingly, the court will not address the plaintiffs' takings claim.
The plaintiffs' appeal is dismissed.
Bishop, J.