[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Cross examination of the defendant has impeached his financial affidavit. He lists in addition to his monthly salary of $2,165.00 a "monthly draw against commissions" of $2,165.00. Nowhere is it explained on the affidavit or in redirect of the defendant the amount of commissions earned against which he draws. In other words, the court is unable to determine his earnings. Marcus v. Marcus, 175 Conn. 138. He also omitted a piano purchased for $4,500.00 on April 26, 1994 (Plaintiff's Exhibit #10) from $8,200.00 insurance proceeds (Plaintiff's Exhibit #8). He did not list a watch collection in his affidavit.
The plaintiff lists "Jewelry (estimated) $1,500.00", but on January 4, 1996 Federal Insurance Company insured jewelry for $31,600.00 consisting of a diamond engagement ring $8,850.00, gold and diamond tennis bracelet $9,500.00 and a ladies Cartier panther watch $12,400.00. The one remaining item is a tie tack for $850.00. The plaintiff did not list or insure her Rolex watch. The court concludes that neither party should receive kudos for accuracy of the respective financial affidavits.
The plaintiff wife, 43, whose birth name was Santamaria, and CT Page 3239 the defendant husband, 44, married on May 26, 1979 in Greenwich, Connecticut. The plaintiff has resided continuously in Connecticut for over one year prior to the filing of her complaint seeking a dissolution of the marriage and other relief. No child has been born to the plaintiff since the marriage.
The plaintiff had completed a B.S. in Education in 1975 and in July, 1976 had begun working for General Signal as a secretary where she remained until September, 1987.
When married, the defendant was doing electronic installation work. Beginning in 1981, the defendant went to work for John D'Elia as a car salesman, and in 1983 was promoted to Assistant Manager. He has continued in this occupation to the present time. In his desire to become a dealer, the parties refinanced their home enabling the defendant to give or loan $130,000.00 to John D'Elia who was acquiring a Cadillac dealership in Bridgeport. The business failed, and the defendant's money was lost, apparently due to bankruptcy of the borrower.
Except for the foregoing loss, caused by the defendant's failure to heed Polonius' advice, the defendant turned in all his earnings for 12 years to the plaintiff, except for incentive checks which he cashed, often spending the money for the plaintiff or for the home.
The parties purchased their home at 12 Eastover Road, Stamford in December, 1985 for $260,000.00 putting $60,000.00 down from joint savings. The parties then embarked on renovations, utilizing family members and friends. The refinancing described above raised $150,000.00. The plaintiff estimates the present fair market value to be $380,000.00 while the defendant estimates it to be $450,000.00. They agree the mortgage balance is about $329,000.00. Neither party presented any expert testimony. Although the parties listed the home for sale for the past twelve months at $439,000.00, not one offer to purchase was received.
The plaintiff developed some health problems in 1988. She was diagnosed as having Graves disease causing double vision, enlargement of the orb, and sensitivity to the sun. She was treated, including four operations on her eyes, the last being in April, 1993. More recently, she has been operated on for removal of a malignant tumor in a lobe of her lung. She has had no recurrence. She is now monitored for Graves, a thyroid condition CT Page 3240 and for her lung. The defendant is in good health.
The plaintiff has been able to obtain employment with Cadbury as of last month, earning $2,916.67 monthly gross and $1,837.50 monthly net after taxes. After six months her pre-existing health problems will no longer be excluded on her medical insurance. The plaintiff also derives income from fitness instruction, earning $180.00 monthly gross.
The plaintiff has a vested pension from General Signal which, at age 65, will pay $204.01 on a life annuity (Plaintiff's Exhibit #6). She has an IRA valued at $8,727.00 as of the end of 1995 (Plaintiff's Exhibit #5). She owns 210 shares of General Signal having a current value of $36.00 per share.[1] The parties had a joint money market account that had $13,000.00 but which has been depleted by a $3,000.00 mortgage payment and other withdrawals by the plaintiff leaving about $6,500.00 or $8,000.00. The plaintiff's testimony leaves the court unsure of the current balance.
Both parties described an unhappy marriage. The plaintiff described in some detail an episode that occurred in 1981 at 2 A.M. when the parties had returned from a party. The plaintiff testified she was hit by the defendant. The defendant testified the plaintiff was belittling his parents when plaintiff scratched him, spit in is face, and to avoid falling down the stairs, the defendant pushed the plaintiff. The plaintiff called her mother to the witness stand to bolster her version. The court concludes that the behavior of both parties at 2 A.M. on the back porch to be indicative of their unhappy marriage. Further comment the court finds unnecessary since they purchased a house and continued to live as husband and wife for many more years. The breakdown can more accurately be likened to the grains of sand running in an hour glass until there was no more sand left to run.
The defendant has earned over $100,000.00 in 1992, 1993, and 1994 (Plaintiff's Exhibits #4-#3-#2). The defendant's affidavit of March 15, 1996 has been impeached and the court finds it to be unreliable as to his actual income. The court infers an ongoing earning capacity of $100,000.00.
Having reviewed the evidence in light of the statutory criteria of § 46b-81 and § 46b-82 the court enters a judgment of dissolution and the following orders as part of the CT Page 3241 decree.
1. The plaintiff is awarded the defendant's interest in 12 Eastover Road, Stamford together with the contents thereof except for the defendant's personal effects and the piano which the defendant shall remove within 60 days at his expense. The plaintiff is awarded exclusive possession of the premises as of May 1, 1996 at noon. If a quit claim deed is not tendered by said date the transfer of the defendant's interest shall be effected pursuant to the statute made and provided.
2. The defendant shall pay to the plaintiff, as periodic alimony, the sum of $200.00 per week until the plaintiff's remarriage, the death of either party, or further court order. A contingent wage withholding order is entered.
3. The plaintiff shall retain her jewelry as her sole property.
4. The parties shall divide equally the money market account and the joint checking account.
5. The pendente lite order arrears is not preserved but is merged in this judgment. The defendant's motion for modification is denied.
6. Each party shall otherwise retain the assets each now possesses.
7. The plaintiff shall be solely responsible for the debts listed on her financial affidavit.
Any dispute that arises as to what constitutes the defendant's personal effects shall be submitted to the court for determination.
Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, JUDGE