[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION de PLAINTIFF'S MOTION TO OPEN JUDGMENT POST JUDGMENT (250) and THE DEFENDANT'S MOTION FOR CONTEMPT (221)
The plaintiff via this motion seeks, pursuant to Connecticut General Statutes § 52-212 (a) and Connecticut Practice book § 17-4 and § 25-38, to open the judgment of dissolution entered July 10, 1998 on the ground of mutual mistake. A separation agreement (179) bearing said date was approved and incorporated in the judgment.
The plaintiff, an insurance broker, organized a company known as Space CT Page 3983 Machine Advisors, Inc. (SMA) owned 75% by plaintiff and 25% by his good friend Richard Guest. The plaintiff obtained PanAmSat as its only customer in 1991. The business consisted of writing launch insurance on each satellite shot into space via rocket and then writing maintenance insurance on the satellite once it reached its orbit. Each launch provided the company with a very substantial commission payment. Between commission receipts the plaintiff paid both his business and personal expenses through the company charging his officer loan account. He is paid an annual salary of $130,000 and he receives commission of 5% of the launch premium from which affiliate brokers abroad are paid. What remains is disbursed to the owners after deducting operating capital needed to continue operating. The plaintiff is President and CEO and Mr. Guest is Executive Vice president and Chief Financial Officer.
SMA provided all launch and maintenance coverage for PanAmSat's satellite fleet until General Motors acquired 81% of PanAmSat less than two years ago. The new majority owner replaced a number of the service organizations including SMA which has the coverage for one satellite to be launched in the second quarter of this year.
Article 4.2 of the separation agreement provides:
 "For purposes of this Agreement `cash disbursements' shall be defined to mean any income actually received by the Husband and any personal expenses paid on behalf of the Husband by Space Machine Advisors, any subsequent business or subsidiary thereof or by virtue of any employment, except for (1) usual, reasonable and actual business expense reimbursements; (2) any amounts paid by the Husband to any taxing authority in satisfaction of the joint 1997 income tax liability in the approximate amount of $395,000; and (3) dividends declared in 1998 for the purpose of repaying loans presently due to his company. `Cash disbursements' shall include earned income and, in particular, all income from wages, salaries, bonuses, consulting or other fees, commissions, director's fees, dividends from employment, and compensation by reason of past, present or future employment, in what ever form received, including payments in cash or in kind, stock or otherwise."
The defendant asks the court to focus on the first sentence of said paragraph, claiming that in addition to any income ". . . actually received . . ." that ". . . any personal expenses paid on behalf of the Husband by Space Machine Advisors . . ." requires payment to the CT Page 3984 defendant of a ". . . percentage of Cash disbursements paid to Wife as Alimony." In the paragraph preceding each of the two schedules just quoted it states that ". . . the Husband shall pay alimony, deductible by the Husband and taxable to the Wife. . . ." The company practice has been to charge the various cash disbursements to an officer's loan account and to periodically reduce the balance when the plaintiff received a bonus. Borrowing money from the corporation does not produce taxable income for the plaintiff nor would sharing the various cash disbursements create a deduction for him or taxable income to her. The paragraph quoted above defines various forms of earned income. The "cash disbursements" can be read to mean that they are to be divided between the parties according to the schedules when they become taxable income. The interpretation proposed by the defendant would create a bookkeeping adjustment every time any item was paid for the plaintiff's personal benefit but would not create any tax benefit for him until it became income.
The separation agreement is to be regarded and the court must construe the agreement as a whole by considering its relevant provisions together in giving meaning to the terms, Barnard v. Barnard, 214 Conn. 99 (1990). The intent of the parties must be determined from the language of the instrument, Sturman v. Socha, 191 Conn. 1 (1983). If the language is clear and unambiguous no room exists for construction, Gino's Pizza ofEast Hartford, Inc. v. Kaplan, 193 Conn. 135, 138 (1984). The language used must be given its common, natural, and ordinary meaning and sensibly applied to the subject matter, Sturman, supra.
The corporation and the minority stockholder are not parties to this action and are not bound by the judgment entered in this case. In Marcusv. Marcus, 175 Conn. 138 (1978) the defendant dentist created a professional corporation which conducted his dental practice, paid him a salary, made all expenditures required by the practice, and contributed the maximum allowed to the pension and profit-sharing fund for him and the other employees. As sole stockholder and sole director he made all decisions resulting in reduced income to him in an attempt to avoid paying 25% of income over $24,000 to his former spouse. Another issue in that case was the use of the term "income" without defining the term. In the present case "cash disbursements" is defined and then refined to include "earned income and, in particular, all income. . . ."
The defendant was well aware of the use of an officer's loan account in the conduct of the business prior to the commencement of the dissolution action. The court notes that paragraph 4.1(c) states "The husband further represents that the only income received by him to date in 1998 is his monthly salary and dividends declared in 1998 for the purpose of repaying loans due to his company." There is no mechanism available to the defendant whereby she can force the plaintiff to convert a loan CT Page 3985 amount into income which would then make the money due to the defendant taxable income to her and tax deductible to the plaintiff Under all the circumstances this court does not find the plaintiff in wilful violation of any provision of the judgement. The defendant's motion is denied.
Turning now to the plaintiff's motion, it is evident to the court that the provisions of Article 4 are unworkable as written for the reasons discussed above. The provisions do not provide the defendant with the income she expected nor do they provide the plaintiff with any tax deductibility if the defendant is paid pro rata every time a charge is made to the loan account. The plaintiff's motion is granted to the extent that Article 4 may be reformed.
HARRIGAN, J.T.R.