JANE R. MARSICO *v.* LAWRENCE V. MARSICO
(12292)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued January 9—decision released March 19, 1985

*Robert M. Wechsler,* for the appellant (plaintiff).

*John W. Madigan III,* for the appellee (defendant).

SHEA, J. This appeal requires us to determine the meaning of a provision of a settlement agreement incorporated into the judgment dissolving the marriage of the parties. Because we agree with the interpretation adopted by the trial court, we find no error.

On December 2, 1981, the plaintiff wife obtained a dissolution of her marriage to the defendant husband. The judgment "incorporated by reference" the property settlement agreement signed by the parties. See

General Statutes § 46b-66. The eighth paragraph of the settlement agreement recites that the parties recognize that the defendant husband's interest in his business enterprise as well as in two parcels of real estate, which he was to retain after the dissolution, might increase substantially in value, particularly if the real estate were sold. In the next paragraph, the parties agree, in view of their realization that such an event would result in greatly increasing the defendant's assets above the values stated in his financial affidavit, that the plaintiff wife "should participate in this appreciation of the assets of the Defendant at the time of the dissolution of the marriage"; and, accordingly, they agreed that a judgment lien should be filed upon the land records against the two pieces of real estate "to the end that the Plaintiff's interests under this Stipulation For Judgment shall be protected from [sic] the equity of the Defendant in these two properties."

The agreement then provided for an "additional alimony" payment to the plaintiff wife of $100,000, payable in installments of $10,000 per month commencing on December 1, 1981, and ending on September 1, 1982, which payments were subject to termination only in the event that the plaintiff were to die during that period. By contrast, the "permanent alimony" of $800 per month under an earlier paragraph was terminable upon the remarriage or the death of the plaintiff wife or upon the death of the defendant husband.

In the final paragraph the plaintiff waived the contempt remedy for the collection of the "additional alimony" until such time as one or both of the real estate parcels against which the judgment lien was to be filed were sold or otherwise alienated. In the event of a sale before the end of the period for the payment of the additional alimony, the defendant would deposit in an interest bearing trustee account a sum sufficient to guarantee his payment of such alimony.

On September 30, 1982, the defendant paid to the plaintiff the entire $100,000 obligation designated as "additional alimony." The defendant subsequently requested that the trial court order the release of the judgment lien filed pursuant to the settlement agreement. The plaintiff objected, alleging that the defendant was over $6000 in arrears on his permanent alimony payments and that the judgment lien was intended to secure this obligation as well as the additional alimony obligation, which had been satisfied by the $100,000 payment. The trial court viewed the judgment lien as securing only the additional alimony obligation and ordered the plaintiff to release the lien. We agree with the trial court's interpretation of the settlement agreement.

"Where, as in this case, the provisions of a [settlement] agreement have been incorporated by reference in the judgment, it is necessary to ascertain the intent of the parties as expressed in the language of the agreement rather than to construe the language of the decree itself . . . . " *McDonnell* v. *McDonnell,* 166 Conn. 146, 150, 348 A.2d 575 (1974); accord *Bronson* v. *Bronson,* 1 Conn. App. 337, 338 n.4, 471 A.2d 977 (1984). We have indicated on several occasions that settlement agreements incorporated into dissolution judgments should be interpreted consistently with accepted contract principles. See *Marcus* v. *Marcus,* 175 Conn. 138, 141–42, 394 A.2d 727 (1978); *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647–48, 153 A.2d 828 (1959). "When a contract term is ambiguous, ' "[t]he oft-repeated rule is that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words in the light of the circumstances surrounding the execution of the writing and in the light of the object of the parties in executing the contract." *New Haven Sand Blast Co.* v. *Dreisbach,* 102 Conn. 169, 180, 128 A.

320 [1925].' *White Oak Corporation* v. *State,* 170 Conn. 434, 439, 365 A.2d 1162 [1976]." *Marcus* v. *Marcus,* supra, 141.

The agreement expressly states that the judgment lien was to be filed against the real estate "to the end that the Plaintiff's interests under this Stipulation For Judgment shall be protected from [sic] the equity of the Defendant in these two properties." Although this reference to the plaintiff's interests in the judgment is literally broad enough to include the permanent alimony as well as the additional alimony, such an interpretation is inconsistent with the provisions for a sale of the real estate with a deposit of sufficient funds to secure the performance only of the additional alimony obligation of the defendant. Clearly the agreement contemplated a release of the judgment lien at the time of the sale so that marketable title could be conveyed to a purchaser. The deposit to be made by the defendant at the time of the sale of an amount to secure the payment of the additional alimony appears to allow the substitution of security in the form of a trustee bank account equivalent to the security which theretofore had been provided by the judgment lien. If the judgment lien had also been intended to secure the defendant's permanent alimony obligation, the amount of which could not be readily ascertained in view of the contingencies upon which it would terminate, it is inconceivable that the agreement would not have made provision for its release in order to effectuate the delivery of marketable title at the time of conveyance upon the substitution of some equivalent security agreed upon by the parties. In the absence of such a provision, to hold that the judgment lien was to secure the payment of permanent alimony, as well as additional alimony, would unnecessarily invite further litigation between the parties in order to accomplish the sale of real estate that the agreement envisioned and was intended to facilitate.

As the trial court noted, the position of the plaintiff that permanent alimony is secured by the judgment lien is inconsistent with her motion to require the defendant to post security for the payment of this obligation, which was filed on October 7, 1982, after the additional alimony of $100,000 had been paid in full. The trial court could reasonably have viewed this motion, made soon after the debt secured by the recorded judgment lien had been reduced by $100,000, as an indication that the plaintiff did not then believe that the judgment lien secured the permanent alimony as now claimed.

The plaintiff contends that the fact that the defendant was substantially in arrears at the time the judgment lien was ordered to be dissolved made the court's ruling erroneous because there was a need for the defendant to post security. It appears from the record that the only matter upon which judgment was rendered was the request of the defendant for an order that the recorded judgment lien be released because the obligation which it secured had been performed. It follows from our agreement with the conclusion of the trial court that the lien secured only the interest of the plaintiff in the additional alimony that upon the discharge of that obligation the judgment lien was of no further effect and should be released of record. Whatever the extent of the permanent alimony arrearage, the recorded judgment lien afforded the plaintiff no security for that obligation. The plaintiff did not at the time of the hearing on the motion for release of the judgment lien press her motion to require the defendant to post security, which had been filed about six months earlier. The judgment under appeal has in no way barred the plaintiff from pursuing her motion, nor is she precluded from doing so in the future.

There is no error.

In this opinion the other judges concurred.