[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS NUMBERED 109, 110 AND 112
There are three motions before the court for consideration: Defendant's Motion for Modification of Judgment (docket entry 109), Defendant's Motion to Reopen and Set Aside Judgment (docket entry 110), and Plaintiff's Motion to Adjudge the Defendant in Contempt (docket entry 112).
A decree of dissolution was entered by the court on June 18, 1987. At that time a separation agreement executed by the parties was presented to the court. The agreement was reviewed by the court, along with the financial affidavits of the parties, inquiry was made of the parties, and thereafter, the agreement was found to be fair and equitable. See Connecticut General Statutes 46b-66. The agreement provided in Article II, paragraph 2.1 as follows:
 2.1 Commencing one (1) year from the date of the sale of the marital residence and continuing for eight (8) years thereafter, the Husband, during his lifetime, shall pay to the Wife as alimony until her death and CT Page 1900 notwithstanding her remarriage the sum of One Thousand ($1,000.00) Dollars per month.
 The Husband shall have no obligation to make any payment pursuant to this paragraph 2.1 or to make any payment (in cash or property) as a substitute for the payments required by this paragraph after the death of the Wife. All payments made by the Husband pursuant to this paragraph shall be in cash. (Emphasis supplied.)
The agreement further provided in paragraph 2.2 as follows:
 2.2 It is an integral part of this Agreement that each of the foregoing provisions of this Article II shall be set forth in the judgment of the court which dissolves the marriage of the parties, or be incorporated therein by reference and that the provisions of paragraph 2.1 shall not be modifiable in any manner whatsoever as to amount or term, by the Court or otherwise, except that the Husband may seek modification of the alimony provided herein, pursuant to Paragraph 2.4 of this Agreement. (Emphasis supplied.)[1]
Section 46b-86 (a) of the General Statutes dealing with modification provides "Unless and to the extent that the decree precludes modification. . . ." This has been interpreted to mean that a decree may preclude modification and no modification is permissible if the decree precludes such modification. See Neal v. Neal, 7 Conn. App. 624, 625 (1986).
 "`The words used by the parties' must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract." Beach v. Beach, 141 Conn. 583, 589, 107 A.2d 629
(1954). Sturtevant v. Sturtevant, 146 Conn. 644, 647-48, 153 A.2d 828 (1959.)" Marcus v. Marcus, 175 Conn. 138, 141-42, 394 A.2d 727 (1978). Settlement agreements incorporated into dissolution judgments should be interpreted consistently with accepted contract principles, and when a contract term is ambiguous, the intent of the parties is to be ascertained by a fair CT Page 1901 and reasonable construction of the written words considering both the circumstances of the execution of the writing and the object of the parties. Marsico v. Marsico, 195 Conn. 491, 493, 488 A.2d 1248 (1985).
 A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses. Federal Aviation Administration v. Administrator, 196 Conn. 546, 554, 494 A.2d 564 (1985). "Ambiguous" can be defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one. Lopinto v. Haines, 185 Conn. 527, 538, 441 A.2d 151 (1981).
Baldwin v. Baldwin, 19 Conn. App. 420 (1989).
The language of paragraph 2.2 is clear on its face It is not ambiguous, and the court need not look to the intent of the parties. The agreement of the parties provided that it be nonmodifiable. The defendant is a lawyer and could not have been confused or misled by this language. The agreement provides that the alimony is nonmodifiable. Section 46b-86 (a) precludes the modification of alimony which by its terms is nonmodifiable.
The defendant's motion for modification is denied.
MOTION TO REOPEN AND SET ASIDE JUDGMENT
Paragraph 2.1 of the agreement entered into between the parties and approved by the court and incorporated into the decree provides that alimony shall be paid to the plaintiff "notwithstanding her remarriage." The plaintiff remarried on July 10, 1987, twenty-two days following the decree of dissolution. It is the defendant's claim that the plaintiff told him during the course of their negotiations that she did not intend to remarry. It is the defendant's claim that this was a fraudulent representation on her part and that the decree should be set aside.
The defendant claims that he knew about the plaintiff's plans to remarry three days after the dissolution CT Page 1902 decree. Alimony payments began in June or July, 1989 and were paid through June or July, 1990. The beginning of 1990 the defendant restricted the plaintiff's endorsement of the checks by stating "Under protest — subject to recapture." The defendant's motions were filed in April, 1990 and were not filed until the plaintiff filed her first motion for contempt. The defendant chose not to pursue his motions until after the plaintiff's second motion for contempt.
The defendant is an attorney at law practicing for twenty-five years. He has represented clients in dissolution of marriage proceedings.
The following language in the case of Kenworthy v. Kenworthy, 180 Conn. 129, 131 (1980) expresses the law with respect to the opening of a judgment for fraud.
 It is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened without the assent of the parties if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or by mutual mistake. (Citations omitted.) The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time. . . . (Citations omitted.)
The following language from the case of Jucker v. Jucker, 190 Conn. 674, 676 (1983) sets forth the law with respect to the court's duty upon the submission of a property settlement agreement in a dissolution proceeding:
 "With. . .judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support." (Citations omitted.) Baker v. Baker, 187 Conn. 315, 322, 445 A.2d 912 (1982). "`Under our statutes, a court has an affirmative obligation, in divorce proceedings, to determine whether a settlement agreement is "fair and equitable under all the circumstances." General Statutes 46b-66. CT Page 1903 [To this end] [t]he presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. Monroe v. Monroe, 177 Conn. 173, 183-84, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d 14
(1979).'" Baker v. Baker, supra, 321-22.
As has been previously stated, the court conducted such a searching inquiry in this case.
The Jucker case also sets forth the requirements for setting aside a judgment on the basis of fraud. The following language from page 677 is controlling in this situation:
 Although the law will intervene to insure that substantial justice is done where fraud has been perpetrated, the frequency and extent of this intervention must be tempered by a sometimes conflicting adjudicative proposition that mandates the ultimate conclusion of all legal controversy. Thus, the setting aside of a judgment on the basis of fraud "will only be granted if the [movant] is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence. . . in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) 11.7, pp. 540-42; [note,] 36 Ill. L. Rev. 894, 896-97 (1942)." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317 (1980)
Fraud has been defined as "deception practiced in order to induce another to part with property or to surrender some legal right." Alexander v. Church, 53 Conn. 561, 562
(1886).
The court finds that there has been no deception by the plaintiff, that there has been no misrepresentation by the plaintiff to the defendant and, thus, no fraud. The court finds further that there has been laches on the defendant's part and unreasonable delay in presenting this issue. Certainly, CT Page 1904 plaintiff's exhibit B evidences the defendant's acquiescence.
The defendant's motion to reopen the judgment is denied.
PLAINTIFF'S MOTION FOR CONTEMPT
A like motion was before the court on April 26, 1990. At that time, the court (Ballen, J.) found an arrearage of $11,753.00. Since that date, $3,000 has been paid reducing the arrearage to $8,753.00 and $6,000.00 more is due by way of alimony, thereby making a total arrearage of $14,753.00. In addition, $570.00 has been incurred in uninsured medical expenses for Jennifer. (See plaintiff's exhibit A.) The defendant's obligation for these uninsured expenses is $285.00. (See paragraph 5.1 of the parties' agreement.)
The defendant takes the position that he should not be obligated to pay this expense for Jennifer in view of her remarriage in August, 1989. Her graduation from college occurred in May, 1990. The services of Dr. Ferris for Jennifer were incurred prior to her graduation.
The parties, in their agreement of June 18, 1987, provided for the payment of certain expenses for their two children who were then both over the age of 18. For Jennifer, the parties agreed to divide equally uninsured medical, dental, ophthalmological, psychiatric and psychological expenses for Jennifer "until she is no longer attending college, is graduated from college or December 8, 1990, whichever event first occurs."
The services were incurred while Jennifer was still attending college, before her graduation and before December 8, 1990. The agreement did not provide for termination upon her remarriage nor does it make any difference that Jennifer is now twenty-six years of age. The language of the agreement is clear on its face. The parties are equally responsible for the uninsured portion of Dr. Ferris' bill for services to the date of Jennifer's graduation from college.
Finally, the defendant challenges the provision of the agreement regarding life insurance. (See paragraph 7 of the agreement.) This provision of the agreement requires that the defendant designate the plaintiff as the irrevocable beneficiary of at least One Hundred Thousand ($100,000.00) Dollars face amount of life insurance on his life until his obligation to maintain life insurance pursuant to paragraph 2.1 of the agreement terminates. The defendant maintains that this obligation reduces as the amount of alimony remaining to be paid reduces. His position is that the life insurance provision is CT Page 1905 only to secure the alimony amount remaining to be paid.
Again, however, the agreement does not provide for a decreasing amount of life insurance. The language of the agreement is, again, plain on its face. The obligation to pay alimony may be separate and apart from an obligation to pay alimony. As has been stated in the case of Mauro v. Mauro,16 Conn. App. 680, 682-83 (1988): "The trial court's authority to order one former spouse to name and maintain the other as the primary beneficiary on a life insurance policy independent of an alimony award was upheld in Papageorge v. Papageorge, 12 Conn. App. 596
(1987).
The court finds an arrearage on the motion for contempt of $15,038.55. Of this amount $6,000.00 is due by way of alimony arrearage and $8,753.55 is due by way of past due expenses for Jennifer.
The defendant is obligated to maintain at least One Hundred Thousand ($100,000.00) Dollars face amount of life insurance on his life for so long as he is obligated to pay alimony.
While the court recognizes that some of the same arguments to justify the defendant's not paying were made in the proceedings before Judge Ballen which were reasons for Judge Ballen not finding him in contempt, the court, nevertheless, does not find the defendant in contempt in this proceeding. The court finds that there has been an inability to pay and, therefore, not an intentional or wilful violation of the court's orders.
The defendant expects the payment of a fee of $17,281.00 within the next two or three weeks. The court orders that $8,753.00 of that amount shall be paid on the arrearage. Such amount shall pay the arrearage upon the expenses for Jennifer. The alimony arrearage shall be paid in an amount of $100.00 per month in addition to the current order of $1,000.00 per month until fully paid.
The plaintiff has incurred legal fees in connection with this proceeding. The plaintiff has incurred total legal fees of $9,607.50 of which $3,000.00 has been paid and $6,607.50 remains to be paid. Since the court has not found the defendant in contempt, counsel fees cannot be awarded pursuant to 46b-87
of the General Statutes. Since the court has found that the defendant did not have the financial ability to pay the alimony, it is clear that he does not have the financial ability to pay counsel fees. Finally, the court has not been furnished with a financial affidavit of the plaintiff to consider her ability to CT Page 1906 pay counsel fees for herself.
In summation, the following orders shall enter:
Defendant's Motion for Modification — denied.
Defendant's Motion to Reopen — denied.
Plaintiff's Motion for Contempt — no contempt found.
Arrearage of alimony — $6,000.00.
Arrearage of past due expenses for Jennifer — $8,753.55.
Defendant to pay $8,753.55 from the fee anticipated to be received by the defendant when received.
Alimony arrearage to be paid $100.00 per month until fully paid, commencing March 1, 1991.
Counsel fees on motion for contempt — denied.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE